Zingsem *v.* Kidd.

## Godfrey N. Zingsem

*v.*

## Thomas A. Kidd and others.

An omission of part of the premises from the description in a sheriff's deed on the foreclosure of a mortgage covering the entire premises, was corrected. It was shown in the case that all of the parties interested were represented at the sale, and that they, as well as the vendee, understood that the entire premises were being sold ; that a full consideration was paid ; that the defendant's mortgage, a subsequent encumbrance, was satisfied ; and that the vendee had, ever since the sale, been in quiet possession of the whole tract, and had expended large sums of money in permanent improvements thereon.

On final hearing on pleadings and proofs.

*Mr. J. D. Bedle,* for complainant.

*Mr. W. P. Wilson,* for Squier.

*Mr. C. H. Voorhis,* for Kidd.

The Chancellor.

The bill in this cause is filed by Godfrey N. Zingsem against Thomas A. Kidd, William S. Squier and William Williams, under the act " to compel the determination of claims to real estate in certain cases, and to quiet the title to the same." (*P. L.* 1870, p. 40.) The complainant, on the 15th of March, 1873, purchased the premises mentioned in the bill of complaint, at a sale by the sheriff of the county of Bergen, under a writ of *fieri facias* for the sale of mortgaged premises issued out of this court. The price at which he so purchased them was $60,000, which was duly paid, and the sheriff delivered to him his deed for the property. Subsequently, and in the year 1875, the complainant ascertained that some question might arise in

regard to his title to the premises by reason of an imperfection or error in the description of the land in the sheriff's deed. On the 9th of September, 1876, he filed his bill in this cause for relief in the premises. The defendant, Kidd, was the owner of the equity of redemption in the premises at the time of the commencement of the proceedings for foreclosure under which the execution above mentioned was issued. Squier had an interest in the premises, under an agreement between Kidd and others in respect to the property. Williams is made a party to this suit by reason of proceedings in attachment against Kidd, issued in the year 1874.

The bill prays that all doubt and dispute concerning the land and premises, and the complainant's title thereto, may be cleared up and settled, and that the defendants may be decreed to have no estate or interest, lien or encumbrance, in or upon the property..

Kidd and Squier have each answered; Williams has not. The alleged imperfection in the complainant's title arises from a claim that the sheriff's deed did not convey to him the entire mortgaged premises, but only a part thereof. Those premises consisted of two lots of land in Hackensack, respectively spoken of in the proceedings as the Westervelt tract and the Voorhis tract, each containing about fifty acres, and both unimproved at the time of the sale. The defendants Kidd and Squier allege, by their answers, that the Westervelt tract alone was sold and conveyed by the sheriff to the complainant.

It appears that, on the 3d of August, 1867, Zingsem was the owner of the two tracts. They were then subject to a mortgage of $27,800 of that date, given by him to Kidd. On that day he conveyed the premises to Kidd, subject to a mortgage which the latter held thereon, for the consideration expressed in the deed of $32,000. The land was described in the deed in two parcels, one as all that certain lot, tract or parcel of land and premises situate, lying and being in the township of New Barbadoes, in the county of Bergen, in this state, at a place called Cherry Hill, the

courses, distances and boundaries being given, and it being declared to be all that portion of the property conveyed by Thomas Voorhis and wife to Zingsem, by deed of November 1st, 1860, which lies westerly of the centre of the old public road leading from Hackensack to New Bridge, and comprising, also, a small portion of the property late of Peter I. Voorhis, which lies southerly of the centre line of Catalpa avenue, excepting certain lots therein mentioned; the other tract was described as all that certain lot or tract of land in the said township which was conveyed to Zingsem by Margaret Westervelt and Mary Vreeland by deed of even date with the deed from Zingsem to Kidd, and bounded northerly by Spring Valley avenue.

Kidd and his wife gave to Zingsem, to secure the purchase-money, a mortgage upon the premises, in which the property is described as follows :

"The first tract being the same which was conveyed to the said Godfrey N. Zingsem by Margaret Westervelt and Mary Vreeland, by their deed bearing even date with these presents, and which said deed is recorded in the office of the clerk of Bergen county, in book    of deeds for said county, on page    , and, for a more particular description of said property, reference being had to said deed or the record thereof will more fully appear; this first tract, with the other, being the same tracts which were conveyed to the said Thomas A. Kidd by the said party of the second part, by deed bearing even date with these presents, and which said deed is recorded in the office of the clerk of Bergen county, in book    of deeds for said county, on pages    , excepting from the effect of this mortgage as therein excepted. For a more particular description of said property and the exceptions therein, reference being had to said deed or the record thereof will more fully appear. The lands hereby conveyed are the same which were conveyed to said Thomas A. Kidd by said Godfrey N. Zingsem and wife by deed of even date herewith."

On the 2d day of May, 1870, Kidd and his wife gave to Zingsem another mortgage, on a part of the same property, to secure the payment of $5,375. On the 15th day of April, 1871, Zingsem filed his bill in this court to foreclose his mortgages. Kidd and his wife (she is now dead), John

J. Van Buskirk, John H. Edson, Charles A. Winfield, Francis Hernsley and William S. Squier were made parties defendant to the suit; Kidd, in respect to his mortgage, subject to which the property was conveyed to him, as before mentioned, and his ownership of the premises under the deed to him from Zingsem; the other defendants in respect to their interest in the premises under the agreement made by Kidd.

In the bill, the premises are described by the same general description as is contained in the mortgage, the description concluding with the following additional statement: " Which lands are described in said deed as follows: all that certain tract or parcel of land and premises, &c.," describing the Westervelt property according to the description thereof contained in the deed from Margaret Westervelt and Mary Vreeland to Zingsem.

There was no particular description of the Voorhis tract. The *fieri facias* follows the description in the bill, but makes further exception of certain lots, some in one tract and some in the other, which had been sold subsequently to the making of the mortgage to Zingsem, and were not, when the bill was filed, subject thereto. Kidd and Squier, by their answers, substantially claim, as before stated, that, by the sheriff's deed, no title to the Voorhis lot passed to Zingsem, and they also claim that the money raised by the sale ($60,000) being sufficient in amount to cover all the encumbrances on the property, the mortgages are satisfied, and that the complainant is, therefore, entitled to no relief.

The grounds on which the complainant asks the equitable interference of this court are, that the mortgage covered all the land for which he bid, and which he supposed he purchased at the sheriff's sale; that the price he paid was the full value of the whole mortgaged premises ; that Kidd has had full payment of the amount due on his mortgage out of the purchase-money paid by the complainant; that the parties interested in the property were either present or represented at the sale, and all understood that the entire mortgaged premises were offered for sale by the sheriff and sold

by him, under the execution, and that the complainant bid for the whole property; that they all understood that the property which was sold by the sheriff was the entire mortgaged premises, and that they have, ever since, acquiesced in the complainant's assumption that he had purchased the whole property; and that he has had possession of the entire premises ever since the sale, and has made improvements thereon, in buildings and otherwise, to the amount of about $100,000.

The general description of the property in the bill for foreclosure covers the whole mortgaged premises; it is the particular description alone which tends to mislead. That was inserted in aid of the general description, and was not intended to limit it. There is enough in the whole description, taken altogether, to show that the intention was to foreclose all the premises covered by the mortgage. There is no language indicating an intention, by the insertion of the particular description or otherwise, to limit the proceedings only to the Westervelt tract. There is a complete general description of the property, followed by an incomplete particular one. The specific exceptions which are made in the *fieri facias*, and which are not contained in the bill of complaint, are of the premises which were sold after the making of the mortgage to Zingsem, and which, when the *fieri facias* was issued, were not subject thereto, and which ought, therefore, to have been excepted from the sale. All parties understood that the entire mortgaged premises were sold under *fieri facias* excepting those lots. Neither Kidd nor Squier, in the answers filed by them, deny that they understood, or that the complainant understood, that he was purchasing the entire premises covered by his mortgage. What the understanding of Kidd was on the subject, is clearly shown by an agreement made on the 1st day of June, 1872, (the bill to foreclose was filed the 15th day of April, 1871,) between Menck, Kidd and Zingsem, by which it was recited that Zingsem had loaned to Kidd $9,000 on his promissory note, secured by assignment to Menck, in

trust of the mortgage from Zingsem to Kidd, and of a certain interest in a decree of foreclosure (of that mortgage) dated December 30th, 1871, in the suit of Godfrey N. Zingsem against Thomas Kidd and wife and others, in the court of chancery of New Jersey; and that Menck held the mortgage and decree so assigned in trust for the benefit of Kidd, after the payment of the note to Zingsem, and that it was anticipated that, under and by virtue of a decree (the same before-mentioned) in the foreclosure and other proceedings in this court, the lands described in that mortgage would be sold to pay the mortgage, and the subsequent one held by Zingsem; and it was thereupon agreed between the parties that, in case sale should be made under the decree, or any sale should be had of the property or any part thereof, and Zingsem should become the purchaser, and it should become necessary for him to pay to Menck or Kidd the balance due on the mortgage, or found due to Kidd under the decree, then Zingsem might give to Kidd a bond and mortgage on the land for the amount remaining due to the latter, for one year, instead of paying the money in cash.

It appears that, after the sale by the sheriff and the delivery of the deed to Zingsem, and on the same day on which the sheriff's deed bears date, a settlement was made between the parties to that agreement of all the money which was coming to Kidd, or to Menck as assignee, under the decree. It also appears, by the testimony of Mr. Squier, that he understood from Zingsem's solicitor, after the sale, that he (Squier) and those who were interested with him, might take the property at any time within thirty days thereafter, by paying the amount at which it had been struck off to Zingsem ($60,000), and he claims to have been disappointed when he found, as he alleges he did, afterwards, that that proposition was not open to him. It is true, both Zingsem and his solicitor deny that any such proposition was ever made. Nevertheless, Mr. Squier's testimony on that score is evidence that he supposed that all the property described in and covered by Zingsem's mortgage, as well the Voorhis

34

as the Westervelt tract, had been sold to Zingsem by the sheriff under the *fieri facias*. Kidd is silent in his answer on this subject, and offers no testimony, not even his own, in the cause. The evidence is clear that all the parties interested in the property acquiesced in Zingsem's possession of the whole premises. It appears, clearly, that within the two years next succeeding the sheriff's sale, he built expensive houses, six in number, upon the property, and made large expenditures in otherwise improving it; and. it does not appear that either Squier (who had acquired the interest of all those who were interested in the agreement with Kidd) or Kidd ever gave him any intimation even of their claim that his title to the property was imperfect. They permitted him to spend $100,000, as he alleges, in the improvements upon the property, and to possess it undisturbed up to the time of filing the bill. Even in their answer, they set up no title, except such as may have accrued to them as the consequence of the mistake in the foreclosure proceedings.

There can be no doubt about the power of the court to correct the error or imperfection of which the complainant complains, and in respect to which he prays relief. As was said in *Loss* v. *Obry*, 7 *C. E. Gr.* 52, 54 : " To correct deeds for fraud or mistake in them, is one of the ancient and well-established heads of equity jurisdiction, and it is the duty of the court, where such fraud or mistake is clearly proved, to correct it by any means in its power to effect the amendment and the object of it. Mistakes are corrected, even where they occur in the records of proceedings of courts and exist in the records themselves. Such mistakes will be corrected by restraining the parties who might take advantage of them from doing so, or by compelling them to execute proper papers for the purpose of such correction."

No rights of third parties have intervened in this case to prevent the court from granting the relief. The attachment creditor, Williams, has not answered. His attachment against Kidd was not issued until 1874, after the delivery of

Zingsem *v.* Kidd.

the sheriff's deed to Zingsem. He sets up no claim in opposition to the granting of the relief, nor could he do so effectually. This proceeding is substantially between the parties to the foreclosure suit, and, as between the complainant and them, the right of the former to relief is beyond dispute. Nor can the equity claimed by Kidd and Squier in their answers, in reference to the mortgage of $5,375, in anywise affect the result. They insist that nothing, or, if anything, no more than $500, was due on that mortgage. But all questions in regard to the validity of that mortgage and the amount due upon it, are concluded by the decree in the foreclosure suit; and, in this suit, to clear the title, the considerations presented by Kidd and Squier in their answers on this score have no place.

The counsel of Mr. Kidd insisted, on the hearing, that the complainant cannot have legal title to the premises, because it appears from the recitals in the sheriff's deed that the sheriff advertised the property to be sold, under the *fieri facias*, on the 15th of February, 1873, and it appears that that writ was issued on the 18th of December, 1872, and there could not, therefore, have been such advertisement of the sale as required by law. The property was not, in fact, sold, under the writ, until the 15th of March, 1873. No answer in the cause sets up the objection under consideration to the complainant's title; nor was any proof adduced on the subject. The objection cannot now be entertained. *Mead* v. *Coombs*, 11 *C. E. Gr.* 173. Neither Kidd nor Squier claimed title on that ground in their answers. They were bound to set it up in their answers if they intended to rely on it (*P. L.* 1870, p. 20). Moreover, the affidavit provided for by statute was appended to the deed, and the deed was duly approved by a master in chancery, who ordered that it be recorded. It therefore, according to the statute, is evidence of a good and valid sale and conveyance of the property, as if the sale had been reported to and approved by the court. *Rev.* p. 1045, § 13. Nor has the complainant been guilty of laches. It appears, from his testimony, that

it was in the year 1875 when he first discovered, through an effort to borrow money by mortgage upon the property, the alleged imperfection in the description of the property in the sheriff's deed.   He appears to have consulted counsel on the subject without delay.   He was advised by them that there was no reason for apprehension as to the validity of his title, and but little, if any, occasion for recourse to proceedings in this court in reference thereto.   Under the advice of counsel, he filed his bill in this cause on the 9th of September, 1876.

Nor is it any ground of imputing negligence to him, that he failed to discover, before or at the time of the sale, the error or imperfection in the description of the land in the execution and advertisement of the sale.   Though the description of the property, as contained in both, was read in the sheriff's office before the sale, it appears, clearly, that he did not discover that there was any mistake or liability to question therein, and that circumstance constitutes no reason for withholding from him the relief which he seeks. *Waldron* v. *Letson*, 2 *McCart.* 126.   He is entitled to the aid of this court to remove the cloud from his title.   He purchased the property *bona fide*, at a fair sale, under proceedings deliberately conducted, paying full value for it.   He has expended a very large sum of his own money in improving the property since the sale, and he has been in open and undisturbed possession of the property ever since then, claiming to be the owner thereof under that sale.   His title to the whole of the mortgaged premises, except the lots which were specially excepted in the *fieri facias*, which are the following lots on the Cherry Hill map : lots numbered 3 to 14, both inclusive, in block 3; lots 12, 13 and 15, in block 7; lots 9 to 13, both inclusive, in block 8; lots numbered 1 to 4, both inclusive, on block 22, and lots numbered 1 to 9, both inclusive, and lot number 12, in block 23, will be declared to be valid against the defendants in this suit, and it will be decreed that none of them have any title to or estate therein.   The complainant is entitled to costs as against Kidd and Squier.